Nicholson, C. J.,
delivered the opinion of the court.
On the 21st of March, 1861, complainants filed their injunction and attachment bill against defendants in the Chancery Court at Knoxville. They allege that defendant O’Keefe was indebted to them in the sum of $627.45, by note dated August 28, 1860, payable six months from date to J. Eisher & Co., and by them endorsed to complainants.
They allege further, that on the 20th of December, 1860, O’Keefe executed to defendant Ingles a deed for a tract of land in Knox county, but in trust to indemnify said Ingles as his surety in a bond by which defendant O’Keefe bound himself to pay certain specified debts of the firm of Walker, O’Keefe & Co., amounting to about $3,300, and a debt to Martin O’Keefe, of about $887. They charge *640 that on account of certain provisions in the deed it was fraudulent as to creditors, and for that reason they pray that it may be set aside.' But if this cannot be done, they pray that the land be sold, and that their debt be satisfied out of the surplus.
Injunction and attachment process issued, and were regularly executed and levied.
Defendants 'O’Keefe and Ingles answered jointly, admitting the execution of the trust deed, as alleged, but denying that the conveyance was fraudulent in law or in fact. O’Keefe admits the debt due by him to complainants.
In November, 1865,' complainants filed their supplemental bill, in which they allege that at an early period in the war defendant Ingles, in violation of the injunction, sold and conveyed the land described in the trust deed to C. W. Charlton, for an amount exceeding by several thousand dollars the amount of the debts secured, and that Charlton afterwards conveyed the land to Rufus McClung. They charge that both of these sales were made for Confederate money, and that defendant Ingles, shortly after the sale to Charlton, deposited with the clerk of the Chancery Court the amount of complainant’s claim in Confederate notes, and they deny that this was any valid payment. They insist, that as the injunction had not been dissolved, and as Charlton and McClung purchased with notice of- the injunction and attachment, the land still stands chargeable with their claim.
They make O’Keefe, Ingles, Charlton, and McClung defendants to the supplemental bill.
*641 McClung answers, that on the 15th of September, 1862, Ingles and O’Keefe executed to Charlton a deed for the land for the consideration of $10,000, which was paid by him in Confederate money, and that after-wards Charlton conveyed the land to defendant McClung. He says he does not know that the injunction had been dissolved, but he alleges that one of the solicitors of complainants in said suit was consulted by O’Keefe and Ingles previous to said sale, as to the propriety of selling the property, and that said solicitor expressly consented on behalf of complainants that the land might be sold by Ingles, notwithstanding the injunction, provided a portion of the purchase money equal to the amount of complainants’ claim was paid into court, or otherwise secured, to await the result of the suit; and he states that the sale was made in consequence of the consent of the' solicitor so given. He further states that Ingles and O’Keefe did deposit the amount of complainants’ claim in the clerk’s office to await the result of the cause. He says that it was the understanding of all the parties, complainants’ solicitor included, that the money was to be paid in the common currency of the country, which, at the time, was Confederate money
Judgments pro oonfesso were taken against O’Keefe, Charlton and Ingles.
At the June Term, 1871, the cause was heard, when the Chancellor decreed that the deposit of the Confederate treasury notes was no satisfaction of complainants’ claim, and that the lien still subsists, and may be enforced against the land, etc. He gave *642 judgment against Ingles for the amount of complainant’s claim, and interest, and ordered an account, etc. From this decree McClung has appealed to this court. This limits our investigation to the decree against McClung.
The .first question to be settled is, whether the lien of the attachment and injunction was still in force when Charlton purchased the land? If it had been discharged, it was not done by any action of the court, but by the consent of complainants’ counsel in agreeing that the sale might be made. The counsel would have a right to bind their clients by such agreement, and if the evidence shows such agreement, complainants- can not now insist on their lien, unless the authority of the solicitor to give consent was revoked by the existence of the war. Mr. Washburn, • the solicitor of complainants, was examined on this point, and he said “that some time after the bill was- filed, but the precise time not remembered, Col. O. P. Temple, who was the solicitor for defendants, came to me and asked me if we could not make some arrangement by which the land could be sold. I told him that all I wanted was the money for the complainants’ debt, and if that was paid to me, of course I would oppose no obstacle to the sale. Nothing further was said about it, so far as I can remember.”
O. P. Temple, solicitor for defendants, was examined, and said:
“I was consulted by O’Keefe, Ingles and Charlton at the time the sale was made, and I drew the deed, *643 and I remember I advised them that the title would be good. My recollection is, that Mr. "Washburn was consulted with at that time in reference to that sale, and that he assented to it; and this fact, or recollection, is strengthened by the fact that I advised all the parties that the title would be good, which I would not have done if I had not known he assented.”
Wm. Ingles, the trustee, was examined, and said:
“After the suit was brought the land was sold. I was present at the sale. I was requested to make a deed for the land to C. W. Charlton, the purchaser, which I refused to do, without the consent of Mr. Washburn, the attorney in the case for Rice, Chase & Go. The sale was negotiated in the office of Temple & Rodgers. Mr. Washburn did consent to the sale. * * I refused to sign or acknowledge the deed until Mr. Washburn was sent for to get his consent. He did give his consent as attorney for his clients. After his consent, I did sigh and acknowledge the deed.”
These witnesses all agree substantially in the fact, that the land was sold by Ingles and O’Keefe to Charlton with the consent of Wm. Washburn, acting as attorney for complainants. This relieves Charlton of any violation of the injunction ’ or attachment lien in making the purchase, and gave to him a good title to the land, freed from the lien of the attachment or injunction, unless we shall find that the war suspended the power of Mr. Washburn, as solicitor of complainants, to bind them by consenting to the sale.
*644 It will be observed that the original bill was filed on the 21st of March, 1861. The relation of client and attorney was therefore subsisting, and the claim sued' on was in the attorney’s hands for collection, and the suit j^ending before the commencement of the war. But when the land was sold to Charlton on the 15th of September, 1862, and when it is shown Mr. Wash-burn gave his consent, the war was pending.
It appears by the bill that complainants were citizens of Maryland and the defendants citizens of Tennessee. If Maryland was an enemy State, then the debt due from O’Keefe to complainants was not extinguished by the occurrence of the war, but their right to sue was suspended during the continuance of the war: Wheaton’s International Law, 541; Hanger v. Abbott, 6 Wall., 532. But by the act of the Legislature, passed on the 8th of May, 1861, it was enacted, “ that no person in any non-slaveholding State, their agents or attorneys in this State, shall have power to sue for or collect any moneys owing to, or any property claimed by, citizens of any such State, in the State of Tennessee, during hostilities between Tennessee and the Federal government.” By necessary implication the citizens of slaveholding States or their attorneys were allowed to collect debts without restraint. Maryland was a slaveholding State, and complainants were permitted by themselves or attorneys to collect their debts as they could do before the war. When the land in controversy was sold, therefore, in September, 1862, Mr. Washburn’s authority as a solicitor was unaffected by the existence of the war, unless *645 the repeal of the aforesaid act by the 5th section of the Schedule of 1865 will operate retro-actively and render null and void his acts as such solicitor. It is scarcely necessary to say, that if Charlton & Mc-Clung were vested with title to the land by reason of the consent of Mr. Washburn to the sale, the repeal of the act of 1861. could not affect the title so vested. But even if this were not so, this portion of the Schedule was annulled by the Constitution of 1870, which removes all objection to the validity of the consent given by Mr. Washburn.
The question, whether the debtor or trustee -paid over the money to the attorney in pursuance of the agreement, is a question between them, in which the purchaser is not concerned.
Other questions have been discussed in this case which we do not notice, for the reason that the appeal of McClung alone is before us, and by it we are confined to the single question, as to the right of complainants to enforce their attachment lien against the land. We think the Chancellor erred in holding that the lien could be enforced, not only for the reason already stated, but because the validity of the lien depended upon the truth of' the allegation that the trust deed was fraudulent. It was alone on the assumption of fraud in the deed that the attachment could properly issue and be levied on the land. Having determined, as we understand his ruling, that there was no fraud in the deed — and in that we agree with him — we think it was error to hold that complainants were in a situation to claim or enforce any *646 lien upon the land. The deed of trust being valid, complainants could legally claim nothing but a judgment against O’Keefe for the debt, and under the deed to share pro rata in the surplus after the preferred creditors were satisfied. The interest of O’Keefe, the debtor of complainants, in the land was only an equitable right to the surplus of the proceeds. The bill was not so framed as to reach this equitable interest by the process of attachment: Lane v. Marshall, 1 Heis., 30.
Upon both grounds the decree, as to McClung is reversed and the bill dismissed as to him, and the same remanded to be proceeded in under the decree below. The costs of this court will be paid by complainants, and also they will pay the costs below resulting from making McClung a party.